**In the Matter of GANDER MOUNTAIN, INC., a Wisconsin corporation, GRS, Inc., GMO, Inc., Debtors In Possession.**

**Bankruptcy Nos. 96–26478 RAE, 96–26479 RAE and 96–26480 RAE.**

United States Bankruptcy Court, E.D. Wisconsin.

Nov. 12, 1996.

MEMORANDUM DECISION

RUSSELL A. EISENBERG, Bankruptcy Judge.

■ The sole issue addressed is whether a bankruptcy court has authority to set fee caps for professionals employed by debtors in possession and official committees. Counsel for the Official Committee of Unsecured Creditors ("OCC") and for the Debtors In Possession ("Debtors") assert that there is no provision in the Bankruptcy Code and no published decision which permits the court to set fee caps, although courts, for years, have set fee caps. This court believes that it has the authority to set fee caps for professionals, and is doing so. The court is publishing this decision to remedy the no-published-decision "problem."

11 U.S.C. § 328 provides, in part, "The trustee, or a committee appointed under section 1102 of this title, with the court's approv-

al, may employ or authorize the employment of a professional person under section 327 or 1103 of this title ... on any reasonable terms and conditions of employment ..."

While not discussing fee caps specifically, courts have recognized their ability to alter the terms and conditions of a professional retention agreement prior to the "conclusion of such employment." Interpreting sec. 328(a), the court in *In re Allegheny International, Inc.*, 100 B.R. 244, 246 (Bkrtcy. W.D.Pa.1989), stated:

> "Section 328(a) empowers a debtor in possession or official committee to employ professionals on any reasonable terms and conditions of employment, *subject to court approval.* Section 328(a) further allows the court to alter the professional's compensation [n]otwithstanding such terms and conditions, if such conditions prove to have been improvident in light of' unanticipated developments 'at the time of the fixing of such terms and conditions.' *If the court is able to alter the professional's compensation, '[n]otwithstanding such terms and conditions,' then it must follow that the court can alter the terms and conditions of the professional's employment.* (Emphasis added.) Although section 328(a) specifically refers to altering professional compensation 'after the conclusion of such employment,' *it would be absurd to conclude that we must wait until the conclusion of such employment,* when the court realizes that it has acted improvidently in approving the terms and conditions of such employment." (Emphasis added.)

In *In re A.H. Robins Co., Inc.*, 86 F.3d 364 (4th Cir.1996), the court substantially reduced the fees which were provided in a previously approved contingency fee agreement.

In addition, 11 U.S.C. § 105(a) authorizes the court to utilize fee caps.

■ The three cases to which this decision pertains, according to the chairperson of the OCC, are relatively complicated by national standards but, at this time, they are not unusually acrimonious. A sale is possible of all three debtors. The OCC's chairperson

believes these cases could explode. There is a possibility that, if the work levels mushroom the cost:benefit analysis would show that the cost of the professional services exceeds the benefit to all interested persons. Under the circumstances presently existing in these cases, it is reasonable for the court to set caps for all professionals seeking employment and/or payment pursuant to 11 U.S.C. §§ 327–330.

The caps shall be set based upon reasonable expectations at this time of work which will be performed, not work which might be performed under circumstances not now existing. If circumstances change, caps may change. The caps shall not be exceeded without prior court order.